UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 10 2019 ★

LONG ISLAND OFFICE

Nº 14-CR-95 (JFB)

UNITED STATES OF AMERICA,

VERSUS

OLENA KALICHENKO,

Defendant.

**MEMORANDUM AND ORDER**
April 10, 2019

JOSEPH F. BIANCO, District Judge:

On February 26, 2014, Olena Kalichenko ("Kalichenko" or "the defendant") was charged, in a four-count indictment, with sexually exploiting a minor and related offenses. Approximately five months later, on July 17, 2014, Kalichenko, a citizen and resident of Ukraine, was arrested by the FBI after she traveled from the Ukraine to New York. Kalichenko believed she was flying to New York in order to testify against Joseph Valerio ("Valerio"), a resident of Smithtown, New York and a United States citizen, who had been charged in a separate superseding indictment with three counts of sexual exploitation of a child, one count of transportation of child pornography, one count of receipt of child pornography, and one count of possession of child pornography. The government alleged, *inter alia*, that Kalichenko filmed herself in the Ukraine with her daughter ("Jane Doe # 1") doing various sexually explicit acts scripted by Valerio, and sent those videos to Valerio in the United States through her mobile phone and parcel delivery service. The government further alleged that Kalichenko and Valerio exchanged emails regarding the videos and sexually explicit acts. On August 20, 2014, the government obtained a superseding indictment against Kalichenko charging the following: (1) conspiracy to sexually exploit a minor; (2) sexual exploitation of a minor; (3) sexual exploitation of a minor outside of the United States for the purposes of transporting a sexually explicit visual depiction of such conduct into the United States; (4) transportation of child pornography; and (5) production of sexually explicit depictions of a minor for importation into the United States.

On December 24, 2015, Kalichenko filed pre-trial motions including, *inter alia*, a motion to dismiss the indictment for lack of jurisdiction, arguing that (1) the child exploitation statutes at issue have no extraterritorial application to the conduct of a citizen of the Ukraine that took place in the

Ukraine, and (2) the extraterritorial application of these statutes to Kalichenko violates due process. In connection with that motion, Kalichenko conceded that the "[t]he undisputed facts are that Ms. Kalichenko made approximately twenty short video clips and a disk containing images of herself and her two-year old daughter, and electronically forwarded the short videos via electronic medium and the disk via DHL to Valerio residing in Smithtown, New York." (Memorandum of Law in Support of Pretrial Motions, ECF No. 58-1, at 21.) On March 22, 2016, after the motion was fully briefed, the Court issued a bench ruling denying the motion for the reasons set forth on the record.[1] The Court now issues this Memorandum and Order supplementing its bench ruling on the motion to dismiss, including a more detailed discussion of the relevant case authority.

For the reasons set forth on the record on March 22, 2016 and below, the Court holds (1) that 18 U.S.C. §§ 2251, 2252, and 2260, proscribing the creation and distribution of child pornography, apply extraterritorially to a foreign national, such as Kalichenko, who sends child pornography into the United States, and (2) the extraterritorial application of these statutes to Kalichenko does not violate due process because there is a sufficient nexus between Kalichenko and the United States, and Kalichenko had fair warning of prosecution.

## II. DISCUSSION

In the motion, Kalichenko presented three separate challenges to the Court's jurisdiction: first, that 18 U.S.C. §§ 2251,[2] 2252, and 2260 should not apply to a non-citizen acting outside the United States (*see* Mem. Law at 23-24); second, that in this particular case, Kalichenko's due process rights were arbitrarily and unfairly violated, because no nexus existed between her conduct and the United States (*id.* at 27); and finally, that Kalichenko lacked "fair warning" that her conduct would expose her to U.S. criminal prosecution (*id.*).

For the reasons discussed below, the Court finds each of these challenges to be without merit and denies the defendant's motion to dismiss the indictment for lack of jurisdiction.[3]

### A. Extraterritoriality of 18 U.S.C. §§ 2251, 2252, and 2260

The Court interprets federal law with the presumption that Congress ordinarily legislates with respect to domestic matters. *See Morrison v. Nat'l Austl. Bank*, 561 U.S. 247, 255 (2010) (citing *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991)).

---

[1] On April 4, 2016, Kalichenko pled guilty to the charges contained in the superseding indictment. A motion to withdraw the plea is currently pending before the Court.

[2] In addition to being charged with substantive crimes under 18 U.S.C. § 2251(a) and (c), Kalichenko was charged under 18 U.S.C. § 2251(e) for conspiracy to sexually exploit a minor. The Court's conclusions regarding the extraterritorial application of Sections 2251(a) and 2251(c), discussed *infra*, apply with equal force under Section 2251(e). *See United States v. Hoskins*, 902 F.3d 69, 96 (2d Cir. 2018) ("[C]ourts have repeatedly ruled that '[g]enerally, the extraterritorial reach of an ancillary offense, like aiding and abetting or conspiracy, is coterminous with that of the underlying criminal statute.'") (citing *United States v. Ali*, 718 F.3d 929, 939 (D.C. Cir. 2013)).

[3] As a threshold matter, the Court notes that no evidentiary hearing on these issues was requested, nor is one required. As discussed in detail below, the Court's ruling on these issues is based upon the nature of the charges themselves, as well as facts that are contained in the defendant's motion papers and are undisputed for purposes of this motion.

"This presumption serves to protect against unintended clashes between our laws and those of other nations which could result in international discord," *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 115 (2013) (internal quotation omitted), and "applies even if the potential for international discord is weak or nonexistent." *Kollias v. D & G Marine Maint.*, 29 F.3d 67, 71 (2d Cir. 1994) (citing *Sale v. Haitian Ctr. Council*, 509 U.S. 155, 173-74 (1993)).

However, this is only a "canon of construction . . . rather than a limit upon Congress's power to legislate." *Morrison*, 561 U.S. at 255 (citation omitted). "The presumption against extraterritoriality . . . is overcome by clearly expressed Congressional intent for a statute to apply extraterritorially." *Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202, 211 (2d Cir. 2014); *accord United States v. Vilar*, 729 F.3d 62, 72 (2d Cir. 2013) (recognizing that the presumption against extraterritoriality applies to criminal, as well as civil, statutes but that "it is beyond doubt that, as a general proposition, Congress has the authority to enforce its laws beyond the territorial boundaries of the United States.") (internal quotations omitted). "[C]ustomary international law may inform the judgment of a court[,] . . . [but] it cannot alter or constrain the making of law by the political branches of the government as ordained by the Constitution." *United States v. Yousef*, 327 F.3d 56, 92 (2d Cir. 2003).

When the Court determines whether a statute applies extraterritorially, "[it] begin[s] with the text of the statute to determine whether the language has a plain and unambiguous meaning." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108 (2d Cir. 2012) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). A statute's "meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute." *United States v. Epskamp*, 832 F.3d 154, 162 (2d Cir. 2016) (citations omitted). This analysis also allows the Court to reference non-textual sources. *See Kollias*, 29 F.3d at 73 (observing that in *Haitian Ctrs. Council*, 509 U.S. at 177-78, the Supreme Court analyzed whether § 243(h) of the Immigration and Nationality Act of 1952 applied extraterritorially by looking to all available evidence about the meaning of § 243(h)—the government official at whom it is directed, its location in the Act, its failure to suggest any extraterritorial application, the 1980 amendment that gave it a dual reference to "deport or return," and the relevance of that dual structure to immigration law in general).

If Congress intends for a statute to apply to extraterritorial acts, the Court can apply it as long as doing so does not violate due process. *See Yousef*, 327 F.3d at 86; *see also United States v. Pinto-Mejia*, 720 F.2d 248, 259 (2d Cir. 1983) ("A United States court would be bound to follow Congressional direction unless [doing so] would violate the due process clause of the Fifth Amendment.").

i. *18 U.S.C. §§ 2251, 2252, and 2260 Apply to Foreign Nationals and U.S. Citizens*

18 U.S.C. §§ 2251(a) and (c), 2252(a)(1), and 2260(a) each begin by broadly prohibiting either "*any* person" (emphasis added) or "a person" from creating or transmitting images that depict sexually

3

explicit conduct involving a minor.[4] The Second Circuit has read the term "*any* person" as encompassing both U.S. citizens and foreign nationals. *See Epskamp*, 832 F.3d at 163 (stating that the term "*any* person (as compared with *any* United States citizen)" in the context of 21 U.S.C. § 959 applies the statute to both citizens and foreign nationals, and the term "*any* aircraft" applies the statute to aircraft registered to or owned by either citizens or foreign nationals) (emphasis added); *cf. United States v. Hoskins*, 902 F.3d 69, 92 (2d Cir. 2018) (noting that the term "any person" includes foreign nationals, but also observing that applying the Foreign Corrupt Practices Act to a foreign national not covered by the precisely defined categories of the statute, would read the act as "rul[ing] the world").

The Second Circuit's interpretation of the term "any person" applies with equal force to the phrase "a person" utilized in the statutory provisions at issue here. Both "a" and "any" function to broaden the term "person" and ensure that the subsequent text applies to both foreign nationals and U.S. citizens. Thus, the Court holds that the plain and unambiguous language of 18 U.S.C. §§ 2251(a) and (c), 2252(a)(1), and 2260(a) makes clear that these statutes apply to both U.S. citizens and foreign nationals. However, the Court must still determine whether these statutes should apply to these individuals only for conduct within the U.S. territory.

ii. *18 U.S.C. §§ 2251, 2252, and 2260 Apply Extraterritorially*

As set forth below, the presumption against extraterritoriality is overcome in the instant case by the plain text of the statutes which reflect the clear intent of Congress that the statutes at issue apply extraterritorially to both U.S. citizens and foreign nationals.

Congress was acutely aware of child pornography's global scope when it wrote the Child Protection and Safety Act of 2006 and the Effective Child Pornography Prosecution Act of 2007. In the Child Protection and Safety Act, Congress found "the interstate market in child pornography is carried on to a substantial extent through the mails and other instrumentalities of interstate and foreign commerce." Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 501(1)(C) 120 Stat. 623 (2006). This finding was supplemented by Congress's observation that this market is a "multibillion dollar industry of global proportions" and "readily available through virtually every internet technology." Effective Child Pornography Prosecution Act of 2007, Pub. L. No. 110-358, § 102(1), (4), 122 Stat. 4001 (2008). Ultimately, the "technological ease, lack of expense, and anonymity in obtaining and distributing child pornography over the internet has resulted in an explosion in the multijurisdictional distribution of child pornography." *Id.* at § 102(5).

Given the size and breadth of child pornography's global market, restricting these statutes to United States territory would severely diminish their effectiveness. Thus, Congress ensured that 18 U.S.C. §§ 2251, 2252, and 2260 were part of a statutory scheme designed to facilitate the prosecution of *foreign* and domestic producers, distributors, and consumers of child pornography. *See Yousef*, 327 F.3d at 87 ("Congress is presumed to intend extraterritorial application of criminal statutes where the nature of the crime does

---

[4] 18 U.S.C. § 2251(e) defines the requisite penalties for violating or attempting or conspiring to violate the prior provisions in the statute.

4

not depend on the locality of the defendants' acts and where restricting the statute to United States territory would severely diminish the statute's effectiveness.") (citation omitted).

18 U.S.C. § 2251(a) states that "any person" is liable for punishment under § 2251(e) if s/he:

> knows or has reason to know that [a] visual depiction [of sexually explicit conduct involving a minor] will be transported or transmitted using any means or facility of interstate or *foreign* commerce or in or affecting interstate or *foreign* commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or *foreign* commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or *foreign* commerce or in or affecting interstate or *foreign* commerce or mailed.

(emphasis added). Similarly, 18 U.S.C. § 2252(a)(1) provides that "any person" who "knowingly transports or ships using any means or facility of interstate or *foreign* commerce or in or affecting interstate or *foreign* commerce by any means including by computer or mails any visual depiction [of a minor engaging in sexually explicit conduct]" is liable to be prosecuted under the statute (emphasis added).

Based on Congress's findings and the plain text of the statutes, it is clear that the Effective Child Pornography Prosecution Act of 2007 added the phrase "using any means or facility of interstate or *foreign* commerce" to § 2251(a) and § 2252(a)(1) to ensure that those statutes would apply beyond the territory of the United States. Pub. L. No. 110-358, § 103, 122 Stat. 4001 (2008).

Although the Second Circuit has never decided this issue, other circuit courts have reached a similar conclusion when defendants have challenged the extraterritorial application of §§ 2251 and 2252. *See United States v. Frank*, 599 F.3d 1221, 1233 (11th Cir. 2010) ("The language of § 2251A requiring travel in foreign commerce, the broad sweep warranted by child pornography offenses, and Congress's repeated efforts to prevent exploiters of children from evading criminal punishment demonstrate that Congress intended § 2251A to apply extra-territorially."); *see also United States v. Thomas*, 893 F.2d 1066, 1068 (9th Cir. 1990) ("Section 2251(a) does not explicitly state that it applies to conduct outside the United States. . . . [But] Congress has created a comprehensive statutory scheme to eradicate sexual exploitation of children."); *United States v. Harvey*, 2 F.3d 1318, 1327-28 (3d Cir. 1993) (applying U.S.S.G. § 2G2.4(c)(1) extraterritorially because it closely resembles § 2251(a), which, as per *Thomas*, 893 F.2d at 1068, applies outside the United States). The Court recognizes that these cases involved a U.S. citizen or U.S. national as the defendant. However, given the use by Congress of "any person" in the statutory provisions at issue, the persuasive analysis contained in these decisions regarding the extraterritorial reach of these statutes certainly would extend to this Court's decision in connection with a foreign national.

The Court similarly holds that § 2251(c) applies to conduct outside of the United States. Section 2251(c)(1) states that "any person," who, in the circumstances described in § 2251(c)(2), entices or uses a minor to

5

engage in sexually explicit conduct "outside of the United States," for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (e). § 2251(c)(2) specifies that § 2251(c)(1) applies when the person either:

> (A) intends visual depiction[s of sexually explicit conduct involving a minor] to be transported to the United States, its territories or possessions, by any means, including by using any means or facility of interstate or foreign commerce or mail; or
>
> (B) . . . transports such visual depiction to the United States, its territories or possessions, by any means, including by using any means or facility of interstate or foreign commerce or mail.

The Court concludes that this language is "plain and unambiguous," *Louis Vuitton Malletier S.A*, 676 F.3d at 108, and Congress intended this statute to apply to "any person" (U.S. citizen or foreign national) who uses a minor to create child pornography overseas and transports or intends to transport it into the United States.

Finally, it is also evident that Congress intended the scope of 18 U.S.C. § 2260(a) to extend beyond the United States. 18 U.S.C. § 2260's title is "[p]roduction of sexually explicit depictions of a minor for importation into the United States." In order for depictions to be "imported," they must necessarily be created outside the United States and trafficked across the border. Specifically, § 2260(a) states that the statute applies to:

> A person who, *outside the United States*, employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor with the intent that the minor engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, intending that the visual depiction will be imported or transmitted into the United States or into waters within 12 miles of the coast of the United States . . . .

(emphasis added). A plain reading of this text also shows that Congress intended this law to apply to U.S. citizens or foreign nationals who are based outside the United States and import, or intend to import, child pornography into the United States.

In sum, based upon the plain and unambiguous statutory language, which is consistent with the findings of Congress in enacting the statutes, the Court holds that 18 U.S.C. §§ 2251, 2252, and 2260 can be applied extraterritorially to a non-citizen acting outside the United States, if such application comports with due process.

B.   Nexus to the United States

Kalichenko argues in the alternative that, even assuming that the statutes have extraterritorial application, such an application to her conduct violates due process due to a lack of nexus to the United States. The Court disagrees. As set forth below, the Court concludes that the extraterritorial application of these statutes to Kalichenko does not violate due process because there is a sufficient nexus between Kalichenko's conduct and the United States, such that application to her conduct would not be arbitrary or fundamentally unfair.

Generally, "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if [s]he had been present at the effect, if the state should succeed in getting [her] within its power." *Strassheim v. Daily*, 221 U.S. 280, 285 (1911); *see also Pac. Merch. Shipping Ass'n v. Goldstene*, 639 F.3d 1154, 1170 (9th Cir. 2011) (explaining the precedent set by *Strassheim.*); *Carvajal v. Artus*, 07 Civ. 10634(CM)(AJBP), 2009 U.S. Dist. LEXIS 1335, at *8-10 (S.D.N.Y. Jan. 9, 2009) (noting Judge Peck's discussion of the First, Third, Fifth, and Eleventh Circuits' modern application of Justice Holmes's observation in *Strassheim*, 221 U.S. at 285).

Thus, even if Congress writes a law to apply beyond the territorial boundaries of the United States, in order "to apply [that] statute . . . consistently with due process, there must be a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair." *Yousef*, 327 F.3d at 111 (citing *United States v. Davis*, 905 F.2d 245, 248-49 (9th Cir. 1990)). As the Second Circuit has explained, for "non-citizens acting entirely abroad, a jurisdictional nexus exists when the aim of [the] activity is to cause harm inside the United States or to U.S. citizens or interests." *United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011) (citing *United States v. Peterson*, 812 F.2d 486, 494 (9th Cir. 1987)). Knowingly exporting, or conspiring to export, illicit material to the United States falls within this definition. *See United States v. Umeh*, 527 F. App'x 57, 63 (2d Cir. 2013) ("[T]he defendants conspired to distribute drugs with the knowledge that they would be exported to the United States, conduct that clearly falls within *Al Kassar*'s construction of due process.").

When Congress intends for a law to apply extraterritorially, a defendant carries a heavy burden if she seeks to show that a law's extraterritorial application violates due process. *See Epskamp*, 832 F.3d at 168 (citing *United States v. Ali*, 718 F.3d 929, 944 n.7 (D.C. Cir. 2013)). In cases involving the illegal importation of narcotics by foreign nationals, the Second Circuit has expressly rejected the "casual invocation of constitutional . . . limitations on the extraterritorial application of federal laws designed to combat the distribution and importation of drugs into the United States." *United States v. Cohen*, 427 F.3d 164, 168 (2d Cir. 2005) (citing *Yousef*, 327 F.3d at 86).

In the instant case, the defendant maintains that a "review of the pertinent facts surrounding the production and transportation of the videos will clearly demonstrate that the 'aim' of the defendant's activity neither threatened the security or governmental functions of the United States nor caused harm inside the United States to a U.S. citizen or interests . . . ." (Mem. Law at 24.) To support this position, Kalichenko states she was motivated by fear and economic duress, and sent these videos to "a single individual in the United States without any knowledge or intent that [they] be disseminated to other individuals." (*Id.* at 27.)

The Court concludes that the defendant's arguments lack merit and fail to satisfy the defendant's heavy burden of showing that extraterritorial application of these statutes violates due process in this case. Congress has found that "child pornography is often used by pedophiles and child sexual abusers to stimulate and whet their own sexual appetites, and as a model for sexual acting out with children; such use of child pornography can desensitize the viewer to the pathology of

7

sexual abuse or exploitation of children, so that it can become acceptable to and even preferred by the viewer." Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, § 121(4), 110 Stat. 3009-26 (1996). As discussed below, these and other compelling harms to the United States are all implicated by the defendant's conduct and would be clearly understood by any person in defendant's situation.

Even assuming *arguendo* that the defendant's primary motive was money and that she did not consciously plan for these videos to harm the United States or U.S. citizens or interests, her prosecution for the crimes in this case is still completely consistent with due process. Regardless of her economic motive, Kalichenko's clear "aim" was to create and export these images and videos of child pornography to a U.S. citizen in the United States, and the harm caused to the United States by such conduct is obvious. By sending over twenty such videos to Valerio in New York, Kalichenko was actively fueling Valerio's desire to obtain child pornography and was potentially encouraging him to engage in the sexual exploitation of children in the United States. Moreover, although Kalichenko may not have intended for Valerio to share the child pornography, she certainly knew that she had no control over that decision. Thus, these videos harmed U.S. interests by encouraging Valerio (and potentially others, if such images were shared) to potentially physically harm children in the United States. In addition, Kalichenko's conduct also could have encouraged Valerio (and anyone with whom he shared the images) to seek additional child pornography from other sources, thereby further endangering children in the United States due to the demand created for such images. As the Third Circuit noted, in connection with the Congressional findings on Section 2251, "Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child pornography, because the mere 'existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children.'" *United States v. MacEwan*, 445 F.3d 237, 250 (3rd Cir. 2006) (citing the Child Pornography Prevention Act of 1996, Pub.L. No. 104-208 § 121, 110 Stat. at 3009, 3009-27 (1996)). The threat of these types of harms to the United States is sufficient to satisfy due process in this context, regardless of whether such harms in fact occurred. *See Al Kassar*, 660 F.3d at 118 ("If an undercover operation exposes criminal activity that targets U.S. citizens or interests or threatens the security or government functions of the United States, a sufficient jurisdictional nexus exists notwithstanding that the investigation took place abroad and focused only on foreign persons.").

Thus, under applicable Supreme Court and Second Circuit jurisprudence, Kalichenko's intent to create and sell child pornography to a United States citizen, and to export such images into the United States, clearly create a sufficient nexus to the United States to satisfy due process regardless of Kalichenko's ultimate aim or motivation. *See generally Umeh*, 527 F. App'x at 63 (sufficient nexus existed because each defendant entered the conspiracy knowing that the cocaine would be sent to the United States); *see also United States v. Rojas*, 812 F.3d 382, 393 (5th Cir. 2016) (due process nexus satisfied "because defendants were charged with acting with the intent or knowledge that drugs would be unlawfully imported into the United States") (citing *Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011)); *United States v. Gasperini*, 16-CR-441 (NGG), 2017 WL 2399693, at *9 (E.D.N.Y. June 1, 2017) ("While Defendant argues that

the ultimate aim of the alleged fraud targeted foreign companies and persons, that larger aim does not negate the goal of the charged activity: targeting computers in the U.S. for intrusion and exploitation. This alleged purpose is sufficient to satisfy due process limitations on extraterritoriality.") (citation omitted); *United States v. Mostafa*, 965 F. Supp. 2d 451, 459 (S.D.N.Y. 2013) ("Here, it is alleged that two of the hostages were American citizens. Defendant argues that while this may be true, there is no allegation that he intended to harm the United States or its citizens. However, Defendant's specific intent to harm Americans is not what the law requires. Rather, Courts have found a sufficient nexus to exist based upon factors such as the defendant's citizenship or residency, the location of the acts allegedly giving rise to the suit and whether those acts could be expected to or did produce an effect in the United States.") (citations and quotations omitted).

When faced with similar facts in *United States v. Moncini*, 882 F.2d 401 (9th Cir. 1989), the Ninth Circuit arrived at this same conclusion.[5] Moncini, a citizen and resident of Italy, mailed child pornography from Italy to an undercover officer in the United States and was arrested when he arrived in New York. *Id.* at 402-03. On appeal, Moncini claimed the district court lacked jurisdiction because his offense ended when he mailed the illicit material from Italy. *Id.* at 403. However, the Ninth Circuit reasoned that part of Moncini's offense was committed in the United States because he intended for the proscribed material to reach California. *Id.* Because Moncini's offense continued into the United States, the Ninth Circuit found U.S. law enforcement had jurisdiction to prosecute his violation of 18 U.S.C. § 2252(a). *Id.*

Kalichenko, like Moncini, is a foreign national who knowingly sent child pornography into the United States. Congress has found that this material is both harmful to U.S. interests and persons for obvious reasons. *See* Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, § 121, 110 Stat. 3009-26 (1996). There is nothing arbitrary or fundamentally unfair about Kalichenko's prosecution in the United States for such conduct. Accordingly, the Court finds that Kalichenko's alleged crimes meet the nexus requirement under the Due Process Clause.

C. Fair Warning

To the extent that Kalichenko also contends that she lacked fair warning of prosecution (*see* Mem. Law at 27), the Court also finds that argument unpersuasive.

As the Supreme Court articulated in *Bouie v. City of Columbia*,

> The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that [her] contemplated conduct is forbidden by the statute. The underlying principle is that no [defendant] shall be held criminally responsible for conduct which she could not reasonably understand to be proscribed.

---

[5] The Court notes that the Second Circuit has often cited Ninth Circuit law when deciding nexus challenges. *See e.g.*, *Yousef*, 327 F.3d at 111 (citing *Davis*, 905 F.2d at 248-49), for the proposition that a sufficient nexus between the defendant and the United States must exist for a statute to be applied consistent with due process); *see also Al Kassar*, 660 F.3d at 118 (citing *Peterson*, 812 F.2d at 494), for the proposition that a nexus exists when the aim of the activity is to cause harm inside the United States or to U.S. citizens or interests).

9

378 U.S. 347, 351 (1964) (internal quotation omitted). The Second Circuit has emphasized that "[f]air warning does not require that the defendants understand that they could be subject to criminal prosecution *in the United States* so long as they reasonably understand that their conduct was criminal and would subject them to prosecution somewhere." *Al Kassar*, 660 F.3d at 119 (emphasis in original). As discussed below, creating and selling child pornography is so evidently criminal that the defendant should have reasonably understood her actions could lead to prosecution somewhere.

As a threshold matter, the summary of the evidence contained in the defendant's own motion papers suggests that the defendant believed that Valerio's actions were illegal under U.S. law, and she was concerned that she, herself, could be prosecuted in the United States. (*See* Mem. Law Supp. at 4-6, 27.) For example, in an August 23, 2013 email, Kalichenko informed Valerio that she and her new fiancée would "submit all [the evidence against you] directly to New York police."[6] (*Id* at 4.) She then added, "[you] are a mentally sick person and you must be stopped." (*Id*.) Furthermore, when she was interviewed by an Assistant Legal Attaché (ALAT) in the American Embassy, Kalichenko expressed her concern that she could be prosecuted by U.S. law enforcement. (*Id.* at 27.) After the ALAT advised her that U.S. prosecutors could not bring charges in Ukraine, she then asked "if she would get in trouble for [her actions] if she returned to the US for a visit or school." (*Id.*)

In any event, the creation and sale of child pornography is also illegal under Ukrainian law. Prior to the creation of its constitution, Ukraine signed the Convention on the Rights of the Child and ratified the treaty's provisions shortly after Ukraine gained its independence. *See* United Nations Convention on the Rights of the Child Arts. 1-41, Aug. 28, 1991, 1577 U.N.T.S. 3, 55 I.L.M. 1448 (entered into force Sept. 27, 1991). Article 34 of this treaty provides:

> States Parties undertake to protect the child from all forms of sexual exploitation and sexual abuse. For these purposes, States Parties shall in particular take all appropriate national, bilateral and multilateral measures to prevent:
>
> (a) The inducement or coercion of a child to engage in any unlawful sexual activity;
>
> (b) The exploitative use of children in prostitution or other unlawful sexual practices;
>
> (c) The exploitative use of children in pornographic performances and materials.

Approximately four years and ten months after ratifying the treaty, Ukraine wrote its constitution, which contained Article 52. CONSTITUTION OF UKRAINE, Jun. 28, 1996, Art. 52 (1996). This provision states "[a]ny violence against a child, or his or her exploitation, shall be prosecuted by law." *Id.* Given this history, the Court reads the phrase "his or her exploitation" in Article 52 as consistent with Ukraine's commitment to Article 34 of the Convention on the Rights of the Child and its proscription on the exploitative use of children. Thus, the Court

---

[6] The Court also notes that one of the exhibits attached to defendant's papers references that Kalichenko told the FBI that she deleted the videos she sent to Valerio by cellphone because she knew it was wrong. (Ex. 10, ECF No. 58-12 at 2.)

finds that Ukraine's constitution proscribes the sexual exploitation and abuse of children.

To the extent that Kalichenko argues that she did not believe that her conduct (including the creation of child pornography in the Ukraine) was illegal under Ukrainian law, the Court finds that argument to be patently without merit. There is nothing in the record to support that baseless contention. The fact that defendant was worried about her potential prosecution in the United States in conversations with the FBI does not demonstrate that she had no concern about prosecution in the Ukraine; rather, the failure to mention that concern more likely reflected her belief that Ukrainian officials had no knowledge of her conduct and were not likely to become involved. Similarly, although Kalichenko points to the fact that her church members sought to counsel her upon learning of her conduct rather than contacting local authorities (Mem. Law Supp. at 28), the action of church members does not mean that Kalichenko did not understand her conduct violated United States and/or Ukrainian law.

More importantly, even assuming *arguendo* that Kalichenko did not understand her conduct violated Ukrainian or U.S. law, such a lack of understanding would still not be sufficient to demonstrate a lack of "fair warning" under the Due Process Clause. *See United States v. George*, 386 F.3d 383, 390 (2d Cir. 2004). "The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system." *Cheek v. United States*, 498 U.S. 192, 199 (1991). If the defendant was fully aware that her daughter was a minor and that the sexually explicit images and videos she produced were destined for the United States, any person examining U.S. law would understand that he or she faced criminal exposure under such law. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994) (holding that conviction under 18 U.S.C. § 2252, prohibiting interstate commerce in child pornography, only requires proof of the defendant's knowledge that the children depicted are minors); *see also Moncini*, 882 F.2d at 405 (holding that in 18 U.S.C. § 2252 the word "knowingly" only requires that the defendant be aware of the facts surrounding his crime, *i.e.*, the images sent depict a minor engaging in sexually explicit acts). Similarly, the language of the Ukrainian Constitution, regardless of Kalichenko's awareness of it, would clearly put her on notice that her alleged conduct in this case would place her in violation of Ukrainian law.

The Second Circuit does not require that the person actually be aware that the conduct violates the law in order to satisfy due process for purposes of extraterritorial application of U.S. law; rather, the law requires that a defendant "reasonably understand" that the conduct would subject him or her to criminal prosecution somewhere. *Al Kassar*, 660 F.3d at 119. This would include situations where the conduct is "self-evidently criminal." *Id.* Therefore, the standard is an objective, rather than subjective, one. Here, because it would be self-evident to any reasonable person that creating child pornography and sending it to the United States would subject that person to criminal prosecution somewhere (including the United States), any purported lack of such understanding of the law by Kalichenko does not violate the "fair warning" requirement of the Due Process Clause. *See, e.g, Epskamp*, 832 F.3d at 169 ("Here, Epskamp's behavior was self-evidently criminal, and he had every reason to anticipate prosecution for his conduct. In sum, no due process violation occurred when Epskamp was haled into United States court.") (internal citation omitted).

In *Moncini*, the Ninth Circuit also rejected this precise argument. 882 F.2d at 405-406. In particular, the court explained:

> Even assuming Moncini was ignorant of the law as he claims, he must bear the risk of the potential illegality of his conduct. The child pornography laws are directly related to a commonly understood moral censure. The very nature of child pornography, which is commonly regulated throughout the world, should cause a reasonable person to investigate the laws of the United States before sending such material into this country. This is not a case where due process prohibits convicting a person who has unwittingly broken the law through conduct which an ordinary person would not assume to be at least potentially criminal.

*Id.* (citations omitted); *see also United States v. Martinez–Hidalgo*, 993 F.2d 1052, 1056 (3d Cir. 1993) ("Inasmuch as the trafficking of narcotics is condemned universally by law-abiding nations, we see no reason to conclude that it is 'fundamentally unfair' for Congress to provide for the punishment of persons apprehended with narcotics on the high seas.").

In sum, as it relates to extraterritorial application of the child pornography statutes to Kalichenko's alleged conduct in the instant case, the constitutional requirement of fair warning under the Due Process Clause is satisfied. Accordingly, defendant's motion to dismiss the indictment on this ground is denied.

## II. CONCLUSION

For the reasons set forth herein, and in the Court's ruling from the bench on March 22, 2016, the defendant's motion to dismiss the indictment for lack of jurisdiction is denied.

SO ORDERED.

S/ JOSEPH F BIANCO

JOSEPH F. BIANCO
United States District Judge

Dated: April 10, 2019
Central Islip, New York

\* \* \*

The government is represented by Allen Lee Bode, United States Attorneys Office, Eastern District of New York, 610 Federal Plaza, Central Islip, NY 11722. Defendant is represented by Murray Singer, 14 Vanderventer Avenue, Suite 212, Port Washington, NY 10050.