# Murray E. Singer
### Attorney at Law

14 Vandeventer Avenue
Suite 212
Port Washington, New York 11050
email: msingerlaw@gmail.com

tel: (516) 869-4207
fax: (516) 869-4219
mobile: (516) 662-4950

**FILED BY ECF**                                                    April 15, 2019

Hon. Joseph F. Bianco
United States District Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

Re:    USA v. Olena Kalichenko
       14-CR-95

Your Honor:

    I represent Olena Kalichenko in the above-referenced case.  Ms. Kalichenko is scheduled to be sentenced before this Court on May 17, 2019.  Ms. Kalichenko does not believe that she should be sentenced by this Court, as she has been and remains adamant that the Court lacks the authority to hear or render judgment for actions taken by her on Ukrainian soil and involving a Ukrainian victim.  That was the basis for her initial motion to dismiss the charges and for the motion to reconsider the denial of her motion to dismiss based on new information obtained from the Ukrainian government.  Since my appointment to represent Ms. Kalichenko in January, 2019, she has also been adamant that she wants to withdraw her guilty plea.  Ms. Kalichenko's view is that she does not recognize the validity of the guilty plea, and believes, as we have stated in separate motions, that she should be permitted to withdraw the plea and proceed to trial.  However, should the Court proceed to sentence Ms. Kalichenko, it is our view that the Court should impose the minimum term permitted by law.  Given the circumstances under which Ms. Kalichenko participated in these offenses, and the substantial assistance provided by Ms. Kalichenko in the identification, apprehension, prosecution and sentencing of Joseph Valerio, the statutory minimum term, indeed, a term less than the statutory minimum, would be sufficient but not greater than necessary to achieve the objectives of 18 U.S.C. §3553(a).

    The prosecution of Ms. Kalichenko, a Ukrainian citizen whose conduct occurred solely in Ukraine, is the result of her own self-reported conduct, and her willingness to assist and cooperate in the prosecution of Joseph Valerio, the person who suggested, encouraged, demanded and paid for her conduct.  Other than through her involvment with Mr. Valerio, Ms. Kalichenko has no history as the perpetrator of any sexual abuse, no history of any interest in or participation in the creation

1

or dissemination of any type of child pornography, and no interest in or history of sexual interest in women or girls. The prosecution of Joseph Valerio, however, a violent sexual predator living on Long Island, came about solely through the information provided by Ms. Kalichenko. Even after her guilty plea, Ms. Kalichenko continued to assist in the prosecution of Mr. Valerio - her testimony at Mr. Valerio's <u>Fatico</u> hearing was accepted as true by the government and the Court and was used to enhance Mr. Valerio's sentence.

Olena Kalichenko was raised in relative poverty in Ukraine by her mother and grandmother. In October, 2010, as she turned 24, Ms. Kalichenko gave birth to her daughter. Her daughter's father has not acknowledged the child as his and has never provided support for her. As described in the presentence report at par. 58, Ms. Kalichenko was "essentially homeless" during her pregnancy, relying on friends, acquaintances and her church for food and shelter. By June, 2011, Ms. Kalichenko, desperate and poor, created a profile on a dating website in the hope of meeting a man who would marry and support her and her daughter. She ultimately met Joseph Valerio, who paid for Ms. Kalichenko to come to his home on Long Island. During three separate visits, all in 2011, Ms. Kalichenko was physically and sexually assaulted by Mr. Valerio. However, Mr. Valerio also began providing money to Ms. Kalichenko (the first of what came to be a total of only approximately $12,000 sent to Ms. Kalichenko by Mr. Valerio) to help her retrieve her daughter from an orphanage in Ukraine, where she had been placed by Ms. Kalichenko's mother during her first visit to the United States. Still desperate to escape her poverty-stricken life in Ukraine, desperate to get her daughter from a Ukrainian state-run orphanage and to keep her from being returned to the orphanage (Ms. Kalichenko was informed by her mother, and believed, that if she could not find and maintain an adequate home, her daughter would be returned to a state-run orphanage), and still hopeful of finding a husband and provider for herself and her daughter, Ms. Kalichenko agreed to continue her relationship with Mr. Valerio, even signing a "contract" that required her subservience to him. Ms. Kalichenko returned to Ukraine to get her daughter with the intention of returning to the United States with her daughter and marrying Mr. Valerio.

Ms. Kalichenko was unable to get a visa for her daughter to come to the United States, and also had her own visa rescinded when U.S. authorities came to understand that Ms. Kalichenko intended to travel to the United States to get married. Despite this, Mr. Valerio continued to provide money to Ms. Kalichenko to help support her. However, over the course of several months in 2012, Mr. Valerio began to request and ultimately demanded that Ms. Kalichenko create the videos that form the basis for this prosecution or the money, which she desperately needed, would be cut off. At no time did Ms. Kalichenko offer or suggest that any of these videos be made. In fact, it is clear that Ms. Kalichenko was reluctant to comply with these requests. Ultimately, Ms. Kalichenko succumbed to Mr. Valerio's demands, and created videos of herself and her daughter according to the specific instructions from Mr. Valerio as to how and what was to be done. By late 2012, Mr. Valerio stopped sending money to Ms. Kalichenko and contact between them ceased.

During the summer of 2013, Mr. Valerio contacted Ms. Kalichenko and offered her money if she would help in his efforts to adopt a Ukrainian child. Ms. Kalichenko understood what that would likely mean for the child, and wrote to the United States embassy in Kiev, Ukraine in an effort

2

to stop Mr. Valerio from adopting a Ukrainian child. Ms. Kalichenko was contacted by officials at the embassy and was asked to come in to speak to them. She did so, voluntarily, on two occasions in November, 2013. During those meetings, Ms. Kalichenko informed the officials of her own conduct and of the videos she had taken of that conduct, and ultimately provided the videos to the U.S. government officials. This information from Ms. Kalichenko was the first evidence received by the U.S. government of Mr. Valerio's criminal conduct, and led to an investigation of Mr. Valerio, a search of his home, and ultimately the filing of criminal charges against him. In July, 2014, Ms. Kalichenko voluntarily flew to the United States for the purpose of assisting the U.S. government in its prosecution of Mr. Valerio.

Under these circumstances, we find it extraordinarily unfair, indeed we find it unconscionable, that the United States government would not agree to either recognize Ms. Kalichenko's substantial assistance in the identification, arrest, prosecution and sentencing of the violent sexual predator Joseph Valerio by filing a motion pursuant to U.S.S.G. §5K1.1 or by offering to let her plead guilty to a reduced charge with a five year mandatory minimum sentence. Joseph Valerio became known to the government only through the information provided by Ms. Kalichenko, and it was with that information that the government secured a search warrant, which led to the discovery of the evidence and witnesses used to prosecute him. Ms. Kalichenko, even after her arrest and prosecution, continued to assist in the prosecution of Mr. Valerio, by providing testimony at his <u>Fatico</u> hearing which was thereafter used by the government, and the Court, to enhance Mr. Valerio's sentence. Yet for her assistance, the government has done nothing.

Ms. Kalichenko's actions were those of a desperate and abused woman. She sought stability and support for herself and her daughter far from her home, and became a victim. If her actions were solely about money and without regard for her daughter, there were many other ways, separate and apart from her relationship with Mr. Valerio, that she could have achieved this end. She could have worked as a prostitute, or sold her daughter as a prostitute. She could have tried to monetize the videos she made for Mr. Valerio by selling them to others. She could have made additional videos and sold them. She did none of these things. She degraded herself for only one person, Joseph Valerio, and for a limited period of time. Yet the government denies her the consideration routinely afforded people who commit murder, violent gang members, and even others engaged in the sexual exploitation of children.

The government may point to the conduct recorded on video as cause to deny Ms. Kalichenko any consideration, yet this certainly has not been a bar to either a cooperation agreement or a lesser plea for individuals who came forward only after their arrest, not before arrest as in this case, to provide information on others. We would note specifically the cases of three women (Keira Norton, Jenny Lemay and Leigh Marcini) also indicted in 2014 (Ind. No. 14-189) in the Eastern District of New York and charged, as Ms. Kalichenko has been charged here, along with a male sexual predator, with Conspiracy to Sexually Exploit a Child under 18 U.S.C. §2251(a). Each was arrested and charged after the male sexual predator, and each received beneficial plea and/or sentencing consideration that has been denied here to Ms. Kalichenko. Ms. Norton was permitted to plead guilty to a reduced charge, 18 U.S.C. §2252(a), with a five year mandatory minimum

sentence.  Ms. Lemay was permitted to plead guilty to a reduced charge, 18 U.S.C. §1594(c), with no mandatory minimum sentence.  Ms. Marcini pled guilty to the top charge, which carried a mandatory minimum sentence of fifteen years, yet was sentenced to only five years, strongly suggesting that she had cooperated and received a 5K1.1 letter from the government.  Alternatively, the government may point to the fact that the videos were made for money as cause to deny Ms. Kalichenko any consideration, yet this, too, has never been a bar to either a cooperation agreement or a lesser plea for others who have engaged in similar conduct, or worse.  Gang members and mobsters for years have committed crimes for money and/or status, yet routinely are afforded the opportunity to cooperate with the government in exchange for a lesser sentence.  Indeed, cooperators have been paid money by the government in exchange for their assistance and a lesser sentence.  Or the government may point to a series of communications in December, 2013 between Ms. Kalichenko and Mr. Valerio as cause to deny Ms. Kalichenko any consideration, claiming that Ms. Kalichenko was trying to extort money from Mr. Valerio.  Even if this were true, that Ms. Kalichenko was engaged in an effort to extort money from her abuser (the defense denies that this was the case), that, too, has never been a bar to receiving consideration for providing substantial assistance to the government in the prosecution of another wrongdoer.

We contend that Ms. Kalichenko's communications with Mr. Valerio in December, 2013 can and should be seen through a different lens, that of a woman who had degraded herself at the behest of an evil man and thereafter sought restitution for the shame, disgust and guilt she felt as a result of her relationship with him.  Indeed, at the time of the alleged extortion, she had already provided to the government the evidence it needed to investigate Mr. Valerio.  By this time, also, Ms. Kalichenko had been shamed and punished by her church for her conduct.  Whether or not she believed or understood her videorecorded conduct to be illegal, either in Ukraine or in the United States, she knew that her conduct had been immoral and wrong.  She lashed out at the person who had degraded her and pressured her to engage in this terrible conduct, and did so by seeking payment as restitution.  This does not and should not provide a reasonable basis to deny her any consideration for the substantial assistance she provided to the government.

The likely real answer, aside from the legal reality that the government simply does not have to provide any consideration even when it is otherwise warranted, lies in the fact that the government obtained from Ms. Kalichenko all of the information that it needed to prosecute Mr. Valerio before any request for consideration was made.  They simply did not need her anymore so gave her nothing.  If this was part of the government's rationale for denying Ms. Kalichenko any consideration for her substantial assistance to it, this is truly shameful.  Ms. Kalichenko was a Ukrainian citizen who contacted U.S. authorities in Ukraine.  She had no knowledge of American legal procedures.  She acted without the assistance of counsel, or even of any awareness of the need or benefits of legal counsel.  For the United States government to take advantage of anyone under these circumstances is manifestly unjust.

We submit that a sentence to the statutory minimum more than satisfies all of the objectives of 18 U.S.C. §3553(a).  It is substantial punishment for very serious offenses.  Along with the sentence imposed on Mr. Valerio, it affords deterrence to those considering engaging in similar

4

conduct.  We contend that, given Ms. Kalichenko's background and the circumstances of this case, Ms. Kalichenko presents no danger to the community, either here in the United States or back in her home country of Ukraine, where Ms. Kalichenko will be sent upon completion of the prison portion of her sentence.  A sentence of fifteen years (indeed, a sentence of less than fifteen years if permitted by the government) would also properly reflect the nature and circumstances under which these crimes were committed, and Ms. Kalichenko's role in them, and give due regard to the circumstances and pressures under which Ms. Kalichenko found herself.

We therefore urge this Court to sentence Ms. Kalichenko to the minimum term permitted by law.

Thank you very much for your consideration.

Very truly yours,

/s/
Murray Singer
Attorney for Defendant

cc: AUSA Allen Bode by ECF and email